## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

TECHNOLOGICAL MEDICAL
ADVANCEMENTS, LLC,

      *Plaintiff,*

      *v.*

WUHAN GIGAA OPTRONICS
TECHNOLOGY CO., LTD; and
CHARLES VORWALLER,

      *Defendants.*

**JURY TRIAL DEMANDED**

CASE NO: 18-81674-CIV

## AMENDED COMPLAINT

Plaintiff Technological Medical Advancements, LLC ("TMA" or "Plaintiff"), by and through its undersigned counsel, hereby files this Amended Complaint against Defendants Wuhan Gigaa Optronics Technology Co., Ltd. ("Gigaa"), and Charles Vorwaller ("Vorwaller") (collectively, "Defendants"), and in support thereofstates:

## INTRODUCTION

1.    Plaintiff and Defendants, among others, entered into a Settlement Agreement on May 3, 2016 (the "Settlement Agreement"), a copy of which is attached hereto as Exhibit A.

2.    As more fully detailed below, the Settlement Agreement provided that Gigaa granted Plaintiff an exclusive distributorship, for the duration of one year, within the territory of the United States, for the distribution of a certain medical device product manufactured by Gigaa (the "Product").[1]

---

[1]    As defined *infra*, "the Product" refers to: "the VELAS 60B (VELAS 60W 980 nm diode laser, model # VELASII60B) medical laser device manufactured by Gigaa, with the sole indication of use for pain therapy under current TMA FDA 510K . . ." Ex. A, Settlement Agreement § 2.3.

3.      As a further inducement for Plaintiff to agree to the settlement, Gigaa represented in the Settlement Agreement that it had not bulk sold more than ten (10) units of the Product to any one distributor or person in the year 2016.

4.      Despite these contractual obligations and assurances, Gigaa breached the Settlement Agreement by (a) selling Product to other people or entities for distribution within the United States, in contravention of the exclusive distributorship clause; and (b) misrepresented the number of bulk sales of Product to other distributors in the year 2016.

5.      Moreover, Gigaa, with the encouragement and assistance of Vorwaller, has taken affirmative steps to conceal its attempts to avoid the obligations set forth in the Settlement Agreement, and as such is liable for the damages caused due to its multiple breaches of contract.

6.      Vorwaller, despite being a party to the Settlement Agreement and knowing all parties' obligations therein, has purposefully orchestrated a scheme to sidestep the rights and obligations of the parties as laid out therein, and is thus liable for tortious interference.

## **PARTIES**

7.      Plaintiff TMA is a Florida Limited Liability Company, with principal address of 308 Greenwood Drive, West Palm Beach, FL 33405. The sole member of TMA, Bruce Coren, is a citizen of the State of Florida.

8.      Defendant Gigaa is a manufacturer and trading company located in Mainland China, with a known business address of: 5F, Unit A, Building B8, Hi-Tech Medical Device Park, #818 Gaoxin Avenue, East Lake Development Zone, Wuhan 430206, China.  Defendant Gigaa conducts a  substantial amount of business in the United States, and in Florida.

9.      Defendant Charles Vorwaller ("Vorwaller") is a citizen of the State of Colorado.

## **GENERAL ALLEGATIONS**

## **JURISDICTION AND VENUE**

10.     This Court has jurisdiction under 28 U.S.C. § 1332 because (1) the amount in controversy is greater than $75,000, exclusive of interests and costs, and (2) the parties to this action are diverse, as Plaintiff is a citizen of the State of Florida; Defendant Gigaa is a citizen of China, a foreign state; and Defendant Vorwaller is a citizen of the State of Colorado.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims set forth herein occurred in this judicial district.  Moreover, Defendants have consented to venue because the Settlement Agreement which is the subject of this action contains a choice of forum provision, providing, in relevant part, that "[a]ny action related to the enforcement of this Agreement shall be brought . . . in the United States District Court for the Southern District of Florida (assuming diversity and amount in controversy is achieved)."  Ex. A, Settlement Agreement § 9.7.

12.     Further, Gigaa agreed to "accept service of process by email and waived any and all traditional service of process requirements including, but not limited to, the Hague Convention." *Id.*

## **FACTUAL BACKGROUND**

13.     Dr. Bruce Coren ("Dr. Coren") is the registered agent, managing member and majority shareholder of TMA.

14.     Aspen Laser Systems, LLC ("Aspen") is not a party to this action, and is not intended to be a necessary party either as the claims at issue involve the actions of Gigaa is a member of and owns an equitable interest in Aspen.  Defendant Vorwaller is Aspen's Chairman, CEO and President.  .

15.   Fritz Kerr ("Kerr") is a resident of Colorado and does business with Aspen in the State of Florida.  Kerr is the Director of Marketing for Biowave Lasers, located in Florida.

16.   Seagull Services ("Seagull") is a Florida nonprofit organization, providing, among other things, employment to teens and adults with disabilities.  As part of its employment program, Seagull offers business services such as printing, packing, mailing, assembly and fulfillment. TMA and Aspen have used Seagull to package and ship products.

### Origination of the Settlement Agreement

17.   In separate actions, Plaintiff and Dr. Coren asserted claims against certain parties to the Settlement Agreement, and certain parties to the Settlement Agreement asserted counterclaims, petitions for attorneys' fees, and/or defenses.  *See Technological Medical Advancements, LLC v. Teegardin Enterprises LLC, et. al.*, U.S. District Court (S.D. Fla.) Case No. 9:15-cv-80194 ("Federal Action"); *Dr. Bruce Coren and Technological Medical Advancements, LLC v. Charles Vorwaller, Aspen Laser Systems, LLC, and Fritz Kerr*, The Circuit Court Of The Seventeenth Judicial Circuit In and For Broward County, Florida, Case No. CACE-15-000252 ("State Action") (collectively, the Federal Action and the State Action are referred to as the "Settled Litigation").

18.   In the Complaint filed in the Federal Action, TMA alleged multiple counts of willful Trademark Infringement, False Advertising, and violation of Florida's Antiphishing Act ("Federal Action Complaint") against Teegardin Enterprises, LLC, Kenton Hull Teegardin, Advanced Medical Distributors, Corp., Advanced Medical Distributors, LLC, and Paul Schwen.

19.   In the Complaint filed in the State Action ("State Action Complaint"), TMA and Dr. Coren alleged that, in 2012, Vorwaller came into possession of TMA's commercially sensitive

trade secret information, customer lists, and other private business and technological information that were entrusted to him.

20.     Unbeknownst to TMA and Dr. Coren, between 2014 and 2015, Vorwaller was funneling the commercially and technologically sensitive, confidential information to third parties, including, but not limited to, Aspen and Kerr.

21.     Vorwaller, Aspen and Kerr hired TMA's FDA consultant in an effort to obtain lasers from Gigaa that are competitive with the lasers offered by TMA.

22.     Vorwaller –while acting within the scope of his position as an agent of TMA – not only provided confidential information to third parties, he also solicited TMA's clients, competed against TMA, and continued to do so at the time the Settled Litigation commenced, with the malicious intent of forming a competitive business. Based, *inter alia*, on the facts outlined above Plaintiff and Dr. Coren brought claims in State Court which were then resolved by and through the Settlement Agreement.

23.     Given the claims that were at issue in the Settled Litigation involving Gigaa indirectly, Gigaa executed the Settlement Agreement as a party to same and agreed to be bound by the terms thereof.

### Gigaa's Obligations to TMA under the Settlement Agreement

24.     The Settlement Agreement sets forth obligations that are specifically applicable to Gigaa to the exclusion of other Defendant Parties named in the Settlement Agreement.

25.     For example, Section 2.3 of the Settlement Agreement states, in part:

As additional consideration for this Agreement, the sufficiency of which is acknowledged and consented to by all Parties, and as an inducement from Gigaa to TMA to enter into this Agreement, Gigaa hereby grants TMA an exclusive distributorship ("Distributorship") within the territory of the U.S. for, but only for, distribution of the VELAS 60B (VELAS 60W 980 nm diode laser, model # VELASII60B) medical laser device manufactured by Gigaa, with the sole

indication of use for pain therapy under current TMA FDA 510K (the "Product"), for a term of one (1) year commencing on the Effective Date of this Agreement and expiring on the 366th day thereafter (the "Term") . . .

*See* Ex. A, Settlement Agreement at § 2.3.

26.     Further, Section 2.3 of the Settlement Agreement also states:

. . . Gigaa represents it has not bulk sold any Product units to any one distributor or person in excess of 10 Product units in 2016. If Gigaa has made such sales in excess of 10 Product units to any one distributor or person in 2016, it shall provide TMA two free Product units for every 10 Product units sold to any one distributor or person in 2016.

*Id.*

27.     In Section 4, the Settlement Agreement specifies that TMA and Dr. Coren were releasing the Defendant Parties, including Defendants, "from the liabilities, claims, actions, losses, contracts, assignments, obligations (excepting only those undertaken in this Agreement). . ." *See id.* at § 4.1.

28.     In the "Mutual Covenant Not To Sue," the parties to the Settlement Agreement also promise not to sue "excepting only the rights and obligations in connection with the transactions contemplated under this agreement." *See id.* at § 4.3.

29.     In addition, the Settlement Agreement provides that, "the prevailing part, in addition to any other relief to which it may be entitled, shall be entitled to recover from the non-prevailing party, its attorney's fees, court costs and all expenses." *Id.* at § 5.

### Gigaa's Breaches of the Settlement Agreement, and Vorwaller's Scheme to Facilitate Such Breaches

30.     Gigaa is a member of and owns an equitable interest in Aspen. *See* Ex. A, Settlement Agreement at 1.

31.     Upon information and belief, the sales relationship between Aspen and Gigaa is as follows:

a.  Aspen takes orders from customers for lasers in the United States;

b.  Aspen requests to purchase lasers from Gigaa to fulfill those orders;

c.  Gigaa supplies Aspen with the lasers ordered by third parties; and

d.  Aspen directs and manages the record keeping and shipment of products from Gigaa within the United States through a third party packaging and shipping service such as Seagull or other similar entities.

32.     Upon information and belief, Gigaa sold units of the Product in the United States to Aspen and potentially others during the exclusive distributorship term, in contravention of the exclusive distribution clause between Gigaa and TMA, memorialized in the Settlement Agreement.

33.     Upon information and belief, Gigaa sold these units of the Product for the purpose of pain therapy, in contravention of the exclusive distribution clause between Gigaa and TMA, memorialized in the Settlement Agreement.

34.     Upon information and belief, in 2016, Gigaa sold in excess of ten Product units to single distributors prior to the Effective Date of the Settlement Agreement, in direct conflict with the representations made to TMA in order to induce settlement.

35.     On information and belief, using similar deceptive tactics and with Vorwaller's encouragement and assistance, Gigaa sold additional units of the Product beyond those reflected in the email communications with Seagull during TMA's period of exclusive distributorship.

36.     In addition, in an effort to further conceal its breaches of the Settlement Agreement, Gigaa "developed" and sold through Aspen another 60-watt laser with a different name and different casing even though in all other material respects it was identical to the Product.

37.     Each unit of the Product sold by Gigaa in violation of the Settlement Agreement's exclusive distributorship provision represents subtantial lost profits for TMA.

38.     As a result, Gigaa breached Section 2.3 of the Settlement Agreement by violating the exclusive distributorship clause and by misrepresenting the number of Product sold to other customers in 2016, and caused TMA in excess of $150,000 in damages.

39.     Once Vorwaller and Gigaa became aware that Seagull provided information relating to their deceitful sales practices to Plaintiff, Defendants ceased utilizing Seagull for shipping services.

40.     However, upon information and belief, the duplicitous practices of Vorwaller and Gigaa, as described above, continued throughout the term of TMA's exclusive distributorship.

## COUNT I – BREACH OF CONTRACT
### (Against Gigaa)

41.     Paragraphs 1-40 above are incorporated by reference as if fully set forth herein.

42.     Plaintiff and Defendants entered into a Settlement Agreement on May 3, 2016.

43.     The Settlement Agreement was negotiated in good faith; at arms' length; and memorialized the resolution of their disputes. *See* Ex. A, Settlement Agreement at p. 1.

44.     As part of the Settlement Agreement, Gigaa was obligated to use TMA as the sole distributor for the Product in the United States, for the purpose of pain therapy. *See id.* at § 2.3.

45.     Gigaa has sold the Product and substantially identical products through channels and distributors other than TMA, competing directly with TMA for sales in the United States territory and for the purpose of pain therapy.

46.     Additionally, as part of the Settlement Agreement, and specifically to induce TMA to enter into the agreement, Gigaa represented that it had not sold in excess of ten Product units to any one distributor in the year 2016, prior to the effective date of the agreement. *See id.* at § 2.3.

47.     Upon information and belief, Gigaa sold more than ten units to a single distributor prior to the effective date of the Settlement Agreement, in direct conflict with the representations contained in the contract.

48.     Thus, as outlined herein, Gigaa has breached the Settlement Agreement by violating the exclusive distributorship agreement, and misrepresenting the amount of Product units sold in 2016. Moreover, Gigaa has also breached the Settlement Agreement by misrepresenting the amount of Product units sold in 2016.

49.     Gigaa's breaches of its obligations expressly outlined in Section 2.3 of the Settlement Agreement are not covered by the General Releases or Covenants Not To Sue, and as a result, Gigaa remains liable for all damages caused by its breaches, including attorney's fees, as outlined below.

50.     As a result of Gigaa's breaches of the exclusive distributor agreement, Plaintiff has suffered damages in excess of $150,000 for which it is entitled to recover against Defendants.

51.     Furthermore, as a result of Gigaa's breaches and misrepresentations relating to the amount of Product units sold, Plaintiff has suffered damages, including the remedies expressly contained in the Settlement Agreement, for which it is entitled to recover against Defendants.

WHEREFORE, Plaintiff, TECHNOLOGICAL MEDICAL ADVANCEMENTS, LLC demands judgment against Defendant, WUHAN GIGAA OPTRONICS TECHNOLOGY CO., LTD,  for damages in excess of $75,000.00, costs, attorneys' fees as well as prejudgment and postjudgment relief. Further, Plaintiff demands a trial by jury on all issues so triable.

### COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT
#### (Against Vorwaller)

52.     Paragraphs 1-40 above are incorporated by reference as if fully set forth herein.

53.     As aforesaid, Plaintiff and Defendants entered into a Settlement Agreement on May 3, 2016. The Settlement Agreement was negotiated in good faith; at arms' length; and memorialized the resolution of their disputes. *See* Ex. A, Settlement Agreement at p. 1.

54.     Vorwaller was not a party to the exclusive distributorship contract provision contained in Section 2.3, a wholly severable, independent clause solely between Plaintiff and Gigaa.

55.     However, Vorwaller was aware of all agreements and relationships between the parties, including the exclusive distributorship clause contained in Section 2.3 of the Settlement Agreement between Plaintiff and Gigaa. This clause was a contractual term specific to Gigaa, and not to Vorwaller.

56.     By encouraging and facilitating Gigaa's breach of the Settlement Agreement through deceptive practices, including ordering 60-watt lasers from Gigaa, but advising Gigaa to ship them labeled and recorded as 45-watt lasers, and similarly directing Seagull to package and ship 60-watt lasers because they had been falsely identified by Gigaa as being 45-watt lasers, Vorwaller actively interfered in Gigaa's obligations under the exclusive provision of Section 2.3 of the Settlement Agreement with respect to Gigaa's exclusive obligations to Plaintiff.

57.     There is no legitimate, legal justification for Vorwaller's intentional conduct which caused the breaches to occur.  Vorwaller is actively supported and facilitated Gigaa's breaches of the Settlement Agreement, Vorwaller is thusliable for tortious interference.

58.     Specifically, Vorwaller's actions causing breaches of Section 2.3 were malicious and in bad faith, and regardless of his motive, Vorwaller employed improper means to interfere with Plaintiff's rights under, and business relationships created by, Section 2.3 of the Settlement Agreement.

59.     Although Vorwaller was aware of Gigaa's obligations to TMA, he interefered with those obligations by encouraging and facilitating a path for Gigaa to continue to market the Product to third parties within the United Stated for pain therapy.  Vorwaller  devised a scheme to conceal sales of the Product, all of which breached the terms of the Settlement Agreement.

60.     Exhibiting a consciousness of guilt, Gigaa and Vorwaller used a variety of methods to attempt to conceal these types of contractual breaches and misrepresentations from TMA.For example, (a) Aspen would receive a purchase order from a customer for 60-watt Product; (b) Aspen would inform Gigaa of the order and Gigaa would ship the 60-watt Product to the United States with documents showing it to be a 45-watt unit instead of the 60-watt unit that was ordered by the customer; (c) Aspen would then record the information received from Gigaa and maintain records showing that Gigaa had supplied a 45-watt unit; and (d) Vorwaller would direct a third party shipping and packaging company, like Seagull, to ignore the information received from Gigaa and Aspen stating that the order was for a 45-watt unit and package the Product as a 60-watt laser with a warranty for a 60-watt laser for delivery to the customer.

61.     Plaintiff became aware of this scheme when Seagull's employees disclosed to Dr. Coren that Vorwaller was directing Seagull to package and ship the lasers as 60-watt units, even though the information from Gigaa and Aspen showed the sale as being for 45-watt units.

62.     For example, on July 28, 2016, Vorwaller, requested that Seagull "CHANGE the 45-watt laser to '60 watt' – type" for a shipment to Pain Free Life Centers in Michigan and when questioned about warranty information, Vorwaller specified that "the 45 watt is for recording on the shipping document from Gigaa only – we record as 60 watt for the warranty."  A copy of the July 28, 2016 email is attached hereto as Exhibit B.

63.     On August 4, 2016, for a shipment going to Medstar Health in Washington, DC, Vorwaller again instructed Seagull "this may have come in as a 45 watt – but need to change to 60 watt." A copy of the August 4, 2016 email is attached hereto as Exhibit C.

64.     On August 8, 2016, Vorwaller again emailed a request to Seagull to change the packaging for the unit type from a 45-watt unit to "60 watt" prior to shipment. A copy of the August 8, 2016 email is attached hereto as Exhibit D.

65.     On August 9, 2016, Vorwaller, emailed Seagull to verify that the shipment of two 45-watt units would be changed to 60-watts before shipping. A copy of the August 9, 2016 email is attached hereto as Exhibit E.

66.     Although the original shipping and sales records showed otherwise, by supplying Aspen with the Product and using Vorwaller to direct Seagull to package and ship the Product as 60-watt units as opposed to the 45-watt unit reflected in the records of Gigaa, resulting in Gigaa breaching the terms of the Settlement Agreement.

67.     Likewise, as Vorwaller encouraged Gigaa's breaches, requested and facilitated the changes in the packaging for the units actually being sold and altered the sales records to conceal Gigaa's breaches, he was an active participant in orchestrating and covering up Gigaa's breaches, thereby interfering in Plaintiff's rights under the Settlement Agreement.

68.     Vorwaller was not acting in good faith, for the best interests of the parties to the Settlement Agreement, or for the interests of their businesss relationships, or in any way to secure the expectations of the parties to the Settlement Agreement.

69.     Vorwaller was aware of the existence of the Settlement Agreement, and yet acted in such a way to intentionally procure a breach of the exclusive contractual obligatons contained

in Section 2.3 between Gigaa and TMA. Vorwaller interfered without any justification or privilege, soley for his own gain, and to the detriment of Plaintiff in the form of monetary damages.

70.     It is clear that Vorwaller is directly responsible for bad faith, deceptive conduct, causing damage to Plaintiff's rights and economic expectations under the Settlement Agreement.

71.     Thus, as outlined herein, Vorwaller unjustifiably tortiously interfered with Plaintiff's rights under Section 2.3 of the Settlement Agreement.

72.     As a result of Vorwaller's willful and outrageous interference with Plaintiff's rights under the contract, Plaintiff has suffered damages including the remedies expressly contained in the Settlement Agreement, for which it is entitled to recover against Defendants, as well as punitive damages against Vorwaller personally.

WHEREFORE, Plaintiff, TECHNOLOGICAL MEDICAL ADVANCEMENTS, LLC demands judgment against Defendant, CHARLES VORWALLER,  for damages in excess of $75,000.00, costs, attorneys' fees, punitive damages for the intentional and unjustifiable tortious interference claim as well as prejudgment and postjudgment relief. Further, Plaintiff demands a trial by jury on all issues so triable.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### (Against Vorwaller)

73.     Paragraphs 1-40 are incorporated by reference as if fully set forth herein.

74.     As aforesaid, Plaintiff and Defendants entered into a Settlement Agreement on May 3, 2016. The Settlement Agreement was negotiated in good faith; at arms' length; and memorialized the resolution of their disputes.  *See* Ex. A, Settlement Agreement at p. 1.

75.     Vorwaller was not a party to the exclusive distributorship contract provision contained in Section 2.3, a wholly severable, independent clause solely between Plaintiff and Gigaa.

76.     Section 2.3 created a business relationship between TMA and Gigaa, and under this relationship TMA was entitled to the right of exclusive distributorship.

77.     Vorwaller was aware of all agreements and the relationship between the parties, including the exclusive distributorship clause contained in Section 2.3 of the Settlement Agreement between Plaintiff and Gigaa.

78.     By encouraging and facilitating Gigaa's breach of the Settlement Agreement through deceptive practices, including ordering 60-watt lasers from Gigaa, but advising Gigaa to ship them labeled and recorded as 45-watt lasers, and similarly directing Seagull to package and ship 60-watt lasers because they had been falsely identified by Gigaa as being 45-watt lasers, Vorwaller actively interfered in Gigaa's obligations under the exclusive provision of Section 2.3 of the Settlement Agreement with respect to Gigaa's exclusive obligations to Plaintiff, thus interfering with the advantageous business relationship between TMA and Gigaa.

79.     There is no legitimate, legal justification for Vorwaller's intentional conduct which caused the interference with this business relationship to occur.  Vorwaller is actively supported and facilitated Gigaa's breaches of the Settlement Agreement, infringing on Plaintiff's rights under the relationship.  Vorwaller is thusliable for tortious interference.

80.     Specifically, Vorwaller's actions causing breaches of Section 2.3, and interfering with TMA and Gigaa's business relationship, were malicious and in bad faith, and regardless of his motive, Vorwaller employed improper means to interfere with Plaintiff's rights under, and business relationships created by, Section 2.3 of the Settlement Agreement.

81.     Although Vorwaller was aware of Gigaa's obligations to TMA, he interefered with those obligations by encouraging and facilitating a path for Gigaa to continue to market the Product

to third parties within the United Stated for pain therapy.  Vorwaller  devised a scheme to conceal

sales of the Product, all of which breached the terms of the Settlement Agreement.

82.     Exhibiting a consciousness of guilt, Gigaa and Vorwaller used a variety of methods

to attempt to conceal these types of contractual breaches and misrepresentations from TMA. For

example, (a) Aspen would receive a purchase order from a customer for 60-watt Product; (b) Aspen

would inform Gigaa of the order and Gigaa would ship the 60-watt Product to the United States

with documents showing it to be a 45-watt unit instead of the 60-watt unit that was ordered by the

customer; (c) Aspen would then record the information received from Gigaa and maintain records

showing that Gigaa had supplied a 45-watt unit; and (d) Vorwaller would direct a third party

shipping and packaging company, like Seagull, to ignore the information received from Gigaa and

Aspen stating that the order was for a 45-watt unit and package the Product as a 60-watt laser with

a warranty for a 60-watt laser for delivery to the customer.

83.     Plaintiff became aware of this scheme when Seagull's employees disclosed to Dr.

Coren that Vorwaller was directing Seagull to package and ship the lasers as 60-watt units, even

though the information from Gigaa and Aspen showed the sale as being for 45-watt units.

84.     For example, on July 28, 2016, Vorwaller, requested that Seagull "CHANGE the

45-watt laser to '60 watt' – type" for a shipment to Pain Free Life Centers in Michigan and when

questioned about warranty information, Vorwaller specified that "the 45 watt is for recording on

the shipping document from Gigaa only – we record as 60 watt for the warranty."  A copy of the

July 28, 2016 email is attached hereto as Exhibit B.

85.     On August 4, 2016, for a shipment going to Medstar Health in Washington, DC,

Vorwaller again instructed Seagull "this may have come in as a 45 watt – but need to change to 60

watt."  A copy of the August 4, 2016 email is attached hereto as Exhibit C.

86.     On August 8, 2016, Vorwaller again emailed a request to Seagull to change the packaging for the unit type from a 45-watt unit to "60 watt" prior to shipment.  A copy of the August 8, 2016 email is attached hereto as Exhibit D.

87.     On August 9, 2016, Vorwaller, emailed Seagull to verify that the shipment of two 45-watt units would be changed to 60-watts before shipping.  A copy of the August 9, 2016 email is attached hereto as Exhibit E.

88.     Although the original shipping and sales records showed otherwise, by supplying Aspen with the Product and using Vorwaller to direct Seagull to package and ship the Product as 60-watt units as opposed to the 45-watt unit reflected in the records of Gigaa and Aspen, Gigaa breached the terms of the Settlement Agreement.

89.     Likewise, as Vorwaller encouraged Gigaa's breaches, requested and facilitated the changes in the packaging for the units actually being sold and altered the sales records to conceal Gigaa's breaches, he was an active participant in orchestrating and covering up Gigaa's breaches, thereby interfering in Plaintiff's rights under the Settlement Agreement.

90.     Vorwaller was not acting in good faith, for the best interests of the parties to the Settlement Agreement, or for the interests of their businesess relationships, or in any way to secure the expectations of the parties to the Settlement Agreement.

91.     Vorwaller was aware of the existence of the Settlement Agreement and business relationships created thereby, and yet acted in such a way to intentionally procure a breach of the exclusive contractual obligatons contained in Section 2.3 between Gigaa and TMA, interfering with this advantageous business relationship. Vorwaller interfered without any justification or privilege, soley for his own gain, and to the detriment of Plaintiff in the form of monetary damages.

92.     It is clear that Vorwaller is directly responsible for bad faith, deceptive conduct, causing damage to Plaintiff's rights and economic expectations under the Settlement Agreement and business relationship with Gigaa.

93.     Thus, as outlined herein, Vorwaller unjustifiably tortiously interfered with Plaintiff's rights under the exclusive distributorship relationship with Gigaa, created by the Settlement Agreement.

94.     As a result of Vorwaller's willful and outrageous interference with Plaintiff's rights under the business relationship, Plaintiff has suffered damages including the remedies expressly contained in the Settlement Agreement, for which it is entitled to recover against Defendants, as well as punitive damages against Vorwaller personally.

WHEREFORE, Plaintiff, TECHNOLOGICAL MEDICAL ADVANCEMENTS, LLC demands judgment against Defendant, CHARLES VORWALLER,  for damages in excess of $75,000.00, costs, attorneys' fees, punitive damages for the intentional and unjustifiable tortious interference claim as well as prejudgment and postjudgment relief. Further, Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted on this 20th day of December, 2018

> Pike & Lustig, LLP
> */s/ Daniel Lustig*
> Michael J. Pike
> Florida Bar No.: 617296
> Daniel Lustig
> Florida Bar No.: 059225
> 1209 N. Olive Ave.
> West Palm Beach, FL 33401
> Telephone: (561) 855-7585
> Facsimile: (561) 855-7710
> Email:  pleadings@pikelustig.com
> *Counsel for Plaintiff*